IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

NAZIRA URREGO,

    **Plaintiff,**

v.                                               Civil Action No. 3:17cv437

SAMUEL WHITE, P.C.,

    **Defendant.**

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Samuel I. White, P.C.'s ("White") Motion to Dismiss for Failure to State a Claim[1] (the "Motion to Dismiss") pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] (ECF No. 44.) Plaintiff Nazira Urrego, proceeding *pro se*, responded. (ECF No. 46.) White replied, (ECF No. 47), and Urrego filed a sur-reply, (ECF No. 48). The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. Accordingly, the matter is ripe for disposition. The Court exercises jurisdiction pursuant to 28 U.S.C. § 1331.[3] For the reasons that follow, the Court GRANTS the Motion to Dismiss. (ECF No. 44.)

---

[1] White provided Urrego with appropriate notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7(K) for the United States District Court for the Eastern District of Virginia.

[2] Rule 12(b)(6) allows dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

[3] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Construing Urrego's pleadings liberally, it appears she brings Count I pursuant to the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. § 1692, *et seq.*, and Count III pursuant to the Truth in Lending Act ("TILA"), 12 U.S.C. § 226, *et seq.*, and the Home Ownership and Equity Protection Act ("HOEPA"), 15 U.S.C. § 1602(a).

# I. Background

## A. Procedural Background

On June 12, 2017, Urrego, *pro se*, brought the instant suit against White. (ECF No. 1.) On November 2, 2018, the Court dismissed Urrego's First Complaint without prejudice. (*See* ECF No. 35.) Urrego appealed, (ECF No. 36), and the United States Court of Appeals for the Fourth Circuit dismissed the appeal "because an amendment could potentially cure the pleading defects identified in Urrego's complaint." *Urrego v. White*, 764 Fed. Appx. 304 (4th Cir. Va. April 8, 2019). Accordingly, the Fourth Circuit remanded the case "with instructions to allow Urrego to amend her complaint." *Id.* Consistent with that Judgment, this Court "allow[ed] . . . Urrego to amend her Complaint." (May 1, 2019 Order 1, ECF No. 42).

On May 13, 2019, Urrego filed her Amended Complaint. (ECF No. 43.) On May 30, 2019, White filed its Second Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Urrego initially failed to respond. On June 25, 2019, this Court issued an Order requiring "Urrego to show cause why the Court should not grant White's Second Motion to Dismiss on the merits." (June 25, 2019 Order 2, ECF No. 45.) Urrego timely responded to the June 25, 2019 Order and on July 8, 2019, Urrego filed her response to the Motion to Dismiss. Although Urrego did not explain her failure to timely respond, her Response certified that "on JUNE 25, 2019" she "served true and accurate copies of the foregoing document" on defense counsel. (Resp. Mot. Dismiss 10, ECF No. 46.) White replied, and Urrego filed—without authorization—a sur-reply.

2

B.   **Factual Background**

As in her First Complaint, Urrego alleges that White did not have authority to collect on the mortgage debt or initiate foreclosure proceedings against her property.[4] Construing the allegations liberally, as this Court must given Urrego's *pro se* status,[5] Urrego appears to allege three distinct claims to relief.

First, Urrego alleges that White fraudulently began foreclosure on her home in violation of the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. § 1692. Specifically, Urrego alleges that White qualifies as a "debt collector" under the FDCPA, and was therefore required to send a letter "within five days of its first communication with the debtor containing . . . the amount of the debt[;] the name of the creditor to whom the debt is owed[;] a statement that unless the consumer, within 30 days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector." (Am. Compl 2, ECF No. 43.) Urrego submits that White "failed to do" these actions. (*Id.* 3.)

Second, Urrego claims that White "fraudulently attempt[ed] to initiate a foreclose [sic] proceeding on [her] property." (*Id.*) Urrego contends that White "lacked standing" to initiate the foreclosure because "the foreclosing PARTY like the defendant in this case must produce the

---

[4] The Amended Complaint contains relatively little context about the property, the mortgage in question, or any proceedings prior to the filing of the instant lawsuit.

[5] Courts have a duty to construe *pro se* pleadings liberally. *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999). "[A] pro se complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). A *pro se* plaintiff must nevertheless allege facts sufficient to state a cause of action. *Bracey*, 55 F. Supp. 2d at 421 (citation omitted). The Court cannot act as a *pro se* litigant's "advocate and develop, sua sponte, statutory and constitutional claims that the [litigant] failed to clearly raise on the face of [the] complaint." *Newkirk v. Cir. Ct. of Hampton*, No. 3:14cv372, 2014 WL 4072212, at *1 (E.D. Va. Aug. 14, 2014); *see also Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

3

note as well as an assignment showing that the loan was transferred to that entity." (*Id.* 5.) According to Urrego, because the "defendant never held both the note or the mortgage before their attempt on . . . foreclosure," the attempt to foreclose was unlawful. (*Id.*)

Third, Urrego claims that White "is . . . in violation of unfair lending practices" in violation of the Truth in Lending Act (TILA) and the Home Ownership and Equity Protection Act (HOEPA). (*Id.* 6.) Urrego lists several examples of unfair lending practices and other requirements under TILA and HOEPA, but does not offer any factual allegations as to how White engaged in those unfair lending practices or violated those statutes. (*See Id.* 67.)

## II. Legal Standard

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). To survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief.") Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Twombly*, 550 U.S. at 555. Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted).

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Francis*, 588 F.3d at 193. The Court must assume all well-pleaded factual allegations to be true and determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 676–79; *see also Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty, Md.*, 684 F.3d 462, 467 (4th Cir. 2012) (finding that the court in deciding a Rule 12(b)(6) motion to dismiss "must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff'") (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)). This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

### III. Analysis: Motion to Dismiss

The Court will grant White's Motion to Dismiss.[6] Even liberally construed, Urrego fails to state a claim under the FDCPA, Virginia law, or federal lending statutes. The Court will address these claims *seriatim*.

---

[6] Given the relative paucity of context and supporting information in the Amended Complaint, White attaches a number of exhibits to its Motion to Dismiss. For purposes of the Rule 12(b)(6) Motion to Dismiss, the Court assumes the well-pleaded factual allegations in the Complaint to be true and will view them in the light most favorable to Urrego. *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, the "court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint [without converting a Rule 12(b)(6) motion into one for summary judgment] so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396–97 (4th Cir. 2006) (citations omitted).

5

### A. The Court Must Dismiss Urrego's FDCPA Claim Because the Notice Letter Directly Contradicts Her Allegations

Urrego contends that White failed to provide her with statutorily required information prior to initiating foreclosure proceedings. Because the record shows that White did provide Urrego with that information, Urrego fails to state a claim under the FDCPA.

"'The FDCPA protects consumers from abusive and deceptive practices by debt collectors, and protects non-abusive debt collectors from competitive disadvantage.'" *Lembach v. Bierman*, 528 F. App'x 297, 301 (4th Cir. 2013) (quoting *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 135 (4th Cir. 1996)). To prevail on an FDCPA claim, a plaintiff must allege that: (1) he or she was the object of collection activity arising from a consumer debt as defined by the FDCPA; (2) the defendant is a debt collector as defined by the FDCPA; and, (3) the defendant engaged in an act or omission prohibited by the FDCPA, such as using a false, deceptive, or misleading representation or means in connection with the collection of any debt. *See Moore v. Commonwealth Trs., LLC*, No. 3:09CV731, 2010 WL 4272984, at *2 (E.D. Va. Oct. 25, 2010) (citing *Blagogee v. Equity Trustees, LLC*, No. 1:10cv13, 2010 WL 2933963, at *5 (E.D. Va. July 26, 2010)); *see also* 15 U.S.C. § 1692(e).

Urrego appears to allege that White violated 15 U.S.C § 1692(g)[7] by not providing required information to her prior to attempting to foreclose on the Property. After listing the

---

White attaches eight exhibits to its Motion to Dismiss. White identifies the first seven exhibits (Exhibits A–G) as public records. The eighth exhibit (Exhibit H) is a notice letter (the "Notice Letter") from White to Urrego, providing information under the FDCPA. The Notice Letter is central to Urrego's claim that she never received statutorily required information under the FDCPA. Urrego does not dispute the authenticity of the exhibits. Accordingly, the Court will consider each of these documents.

[7] 15 U.S.C. § 1692g(a) provides that:

[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is

requirements of § 1692(g), Urrego contends that "[a]ll these the defendant [White] failed to do . . . proving that the defendant is currently in violation of the [FDCPA]." (Am. Compl. 3.)

The Notice Letter, submitted by White, contradicts Urrego's claim. Specifically, the Notice Letter specifies the amount of the debt owed ("$757,617.25"), and the name of the creditor to whom the debt is owed in capital letters ("THE BANK OF NEW YORK MELLON"). (Notice Letter 1, ECF No. 44-10.) The Notice Letter continues:

> 4. Unless you, within thirty days after receipt of this notice, dispute the validity of the debt, or any portion thereof, we will assume the debt is valid.
>
> 5. If you notify us in writing within the thirty-day period that the debt, or any portion thereof, is disputed, we will obtain verification of the debt and mail a copy of such verification to you.
>
> 6. Upon your written request within the thirty-day period, we will provide you with the name and address of the original creditor, if different from the current creditor.

---

> contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> > (1) the amount of the debt;
> >
> > (2) the name of the creditor to whom the debt is owed;
> >
> > (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
> >
> > (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
> >
> > (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.
>
> 15 U.S.C. § 1692g(a).

(*Id.*) The Notice Letter provides, nearly verbatim, the information required under § 1692g(a).

In response, Urrego does not contest the authenticity of the Notice Letter, that she did not receive the Notice Letter, that she responded to it, or that any of the information was inaccurate. Given the uncontested information provided in the Notice Letter, Urrego fails to allege an "act or omission prohibited by the FDCPA." *Moore*, 2010 WL 4272984, at *2. For that reason, the Court will dismiss Urrego's FDCPA claim.

### B. The Court Must Dismiss Urrego's State Law Claims Because Virginia Does Not Recognize So-Called Show-Me the Note Claims and She Fails to State a Claim for Outright Fraud

Next, Urrego contends that White "lacked standing to attempt to foreclose on [her] property" because it did not "produce the note as well as an assignment showing that the loan was transferred to [White]." (Am. Compl. 5.) According to Urrego, White's failure to produce the mortgage note prior to initiating foreclosure proceedings rendered those proceedings unlawful under Virginia law. (*Id.*) Because Virginia does not recognize "show-me the note" claims and the Amended Complaint does not sufficiently allege actual fraud, Urrego fails to state a claim under Virginia law.

Reading her pleadings liberally, Urrego's claim that White was required to produce the note prior to foreclosure amounts to a "'show me the note' claim[]—where borrowers request the physical note with wet-ink signatures." *Suggs v. M&T Bank*, 230 F. Supp. 3d 458, 463 (E.D. Va. Jan. 18, 2017). However, courts have "roundly rejected" such claims as "plainly contrary to Virginia's non-judicial foreclosure laws." *Davis v. White*, No. 3:13cv780, 2014 WL 1604270, at *10 (E.D. Va. Apr. 21, 2014) (internal citations omitted); *see also Buzbee v. U.S. Bank, N.A.*, 84 Va. Cir. 485 (Va. 2012) ("[s]how me the note cases are contrary to Virginia's non-judicial foreclosure laws, which do not require secured creditors to come before the court to prove their

8

authority to foreclose on secured property"); *Suggs*, 230 F. Supp. 3d at 464. As the Fourth Circuit has explained:

> Virginia is a non-judicial foreclosure state. As Virginia law provides, in the event of default on a deed of trust, the trustee "shall forthwith declare all the debts and obligations secured by the deed of trust at once due and payable and may take possession of the property and proceed to sell the same at auction" without any need to first seek a court decree.

*Horvath v. Bank of N.Y., N.A.*, 641 F.3d 617, 623 n.3 (4th Cir. 2011) (quoting Va. Code Ann. § 55-59(7)). Borrowers cannot compel "compel judicial intervention in any foreclosure proceeding where a deed of trust has changed hands or a substitute trustee has been appointed." *Davis*, 2014 WL 1604270, at *22 (citations omitted).

Urrego's claim that White should be required to "produce the note" has no basis in Virginia law. (Am. Compl. 5.) Urrego nevertheless claims that "the defendant never held both the note or the mortgage before their attempt on a residential disclosure," thus rendering the attempt generally unlawful. (*Id.*) But White, by virtue of its status as substitute trustee, was not required to hold the "note or the mortgage" before foreclosure. (*Id.*) The Bank of New York Mellon, as creditor, possessed the note and directed White, as trustee, to initiate foreclosure proceedings. Even if Urrego's show-me the note claim were cognizable under Virginia law, it would have to be brought against the Bank of New York Mellon.

Finally, to the extent that Urrego alleges actual fraud on the part of White, that claim too must fail.

> Under Virginia law, a plaintiff must allege the following elements to state a claim of fraud: '(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled.'

*Urrego v. White*, 2018 U.S. Dist. LEXIS 125550 (E.D. Va., July 26, 2018) (quoting *Chistoni v. HSBC Bank USA, N.A.*, 2017 U.S. Dist. LEXIS 72568, 2017 WL 1963902, at *5 (E.D. Va. May

9

11, 2017) (quoting *State Farm Mut. Auto. Ins. v. Remley*, 270 Va. 209, 218, 618 S.E.2d 316 (Va. 2005)). As in her first complaint, Urrego fails to "state with particularity the circumstances constituting fraud." *Urrego v. White*, 2018 U.S. Dist. LEXIS 125550 at *23.

Specifically, Urrego fails to allege facts "showing that the [allegedly] false statements listed in the 2011 Notice induced her to take or refrain from taking any particular action." *Id.* at *25. "Thus, Plaintiff's Complaint contains no factual allegations showing the existence of a material fact—the second element required to establish fraud under Virginia law." *Id.* Furthermore, the Amended Complaint, like Urrego's first Complaint, "fails to allege facts showing the damages flowing from [White's] alleged fraud." *Id.* Given these deficiencies, Urrego's claims under Virginia law must be dismissed.

### C. Urrego Fails to State a Claim for Violations of TILA and HOEPA Because White Does Not Qualify as a Creditor Under the Statutes and Urrego Fails To Allege Facts Indicating White Engaged in Unfair Lending Practices

Finally, Urrego claims that White "is . . . in violation of unfair lending practices" under the Truth in Lending Act (TILA) and the Home Ownership and Equity Protection Act (HOEPA). (Am. Compl. 6.) Because White does not qualify as a creditor under either statute and Urrego fails to indicate in which unfair lending practices White engaged, Urrego fails to state a claim.

TILA "promote[s] the informed use of consumer credit by requiring disclosures about its terms and cost" and "prohibits certain acts or practices in connection with credit secured by a dwelling." 12 C.F.R. § 226.1(b). TILA applies only to an "individual or business that offers or extends credit," and defines a creditor as a "person who regularly extends consumer credit that is subject to a finance charge or is payable by written agreement in more than four installments . . . and to whom the obligation is initially payable, either on the face of the note or contract, or by agreement when there is no note or contract." 12 C.F.R. § 226.2(17)(i). TILA "imposes general

10

liability *only on* creditors and greatly circumscribes the liability of assignees." *Vincent v. Money Store*, 736 F.3d 88, 105 (2d Cir. 2013) (emphasis added).

Congress enacted HOEPA in 1994 as an amendment to TILA "to address abusive practices in refinances and closed-end home equity loans with high interest rates or high fees." *Suggs*, 230 F. Supp. 3d at 465 (internal citations omitted). HOEPA restricts creditors from engaging in certain lending practices, and defines a creditor as an entity which

> both (1) regularly extends . . . consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.

15 U.S.C § 1602(g). The definition of creditor in HOEPA "is restrictive and precise, referring *only* to a person who satisfies *both* requirements." *Cetto v. LaSalle Bank Nat'l Ass'n*, 518 F.3d 263, 270 (4th Cir. 2008) (emphasis in original).

Urrego fails to state a claim under either TILA or HOEPA. First and foremost, Urrego does not allege that White "regularly extends consumer credit" or that White acted as a creditor in regard to Urrego or her property. *See* 12 C.F.R. § 226.2(17)(i); 15 U.S.C § 1602(g). Furthermore, the obligation here was "initially payable" to the Bank of New York Mellon as the holder of the contract, meaning White could not qualify as a creditor even if it regularly extended consumer credit. *See id.* White served merely as a trustee, and thus could not violate either statute under the "restrictive and precise" definition of creditor. *Cetto*, 518 F.3d at 270.

Second, even if White could somehow qualify as a creditor under TILA or HOEPA, Urrego does not specify which unfair lending practices White engaged in regarding the foreclosure of her home. The Amended Complaint simply lists various requirements under TILA and HOEPA but does not indicate whether—or how—White allegedly violated them. (*See*

Amended Compl. 6–9.) While the Court must liberally construe Urrego's pleadings, it cannot "advocate and develop, sua sponte . . . claims that the [litigant] failed to clearly raise on the face of [the] complaint." *Newkirk,* 2014 WL 4072212, at *1.

Because White does not qualify as a creditor under TILA or HOEPA and Urrego fails to allege facts indicating any violation of those statutes, the Court must dismiss Urrego's Amended Complaint on those grounds.

## IV. Conclusion

The Court previously provided Urrego the opportunity to amend her complaint, allowing her to clarify her cause of action. Because the Court offered Urrego an opportunity to address the deficiencies in her initial complaint and to state a claim—the Court presumes that Urrego has stated her best case. *See Goode v. Cent. Va. Legal Aid Soc'y, Inc.,* 807 F.3d 619 (4th Cir. 2015); *Domino Sugar Corp. v. Sugar Workers Local Union 392,* 10 F.3d 1064 (4th Cir. 1993); *see also Grady v. White,* 686 F. App'x 153, 154 (4th Cir. 2017) (dismissing without remand because district court previously afforded Plaintiff the chance to amend his complaint). For the reasons stated above, the Court grants the Motion to Dismiss and dismisses with prejudice Urrego's Amended Complaint.

/s/
M. Hannah Lauck
United States District Judge

Date: December 30, 2019
Richmond, Virginia

12